11-15, 14th Avenue, Cook v. IL Labor Relations Board, House Hall Attorney for both parties, please approach the podium and tell us who you are and who you represent, starting with the Appalachian Attorney. Andrew Creighton, Assistant State's Attorney for Cook County. Eric Truitt, Assistant Attorney General for the Labor Relations Board. Your Honor, it's Jonathan Carmel for Leslie Michener and Beverly Joseph, the charging parties in this case. Have you two decided on the Appalachian side who's going to argue or how about the time? We have 15 minutes, but we don't get our watch, as you can see, so we have an argument. The board will go first. We're intending to split time, but certainly I can answer any questions that you have about the board's position. That was my question. Any time you're ready, Mr. Creighton. Morning. I do not believe that there are any important disputed facts in this case. The standard is clear error, which involves the application of law to settle the facts. If this court, the reviewing court here, is left with a definite and firm conviction that a mistake has been made, then the decision of the board should be reversed. I submit to you that the majority's decision is in clear error, and the dissent of the board member, Mr. Anderson, is in fact the correct answer. The dissent is set forth on five different bases. The majority decision first is based solely on the statement of the one witness, Mr. Martinez, who said he would not hire or rehire Ms. Michener because she filed the 14 grievances. Second point in the dissent was the statements were made during a settlement conference, or at least a discussion of grievances that might lead to settlement. Third, Mr. Martinez was not involved in the decision to discharge initially, which he, of course, was not. Four, we all agree in this case, there's no dispute, that nurses Michener and Joseph were insubordinate. And five, the dissent's conclusion that one single bit of information, which is the Martinez statement, should be insufficient to meet the charging party's burden. The court's decision to not reinstate was based on unanimous. I would like to add that there's no evidence in the record that nurses Michener and Joseph ever agreed to sign the consent forms. But now they've been ordered, right? The board, in their wisdom, said that after three years and eight months of adamantly refusing to sign, they'll make sure she signs it and then they'll give her her back.  And that's clear from the orders. No dispute about that. I want to talk about a little bit in regards to the timeline on this. The Martinez statement was made in April of May of 09 during the grievance discussions of the settlement conference. Then there were the arbitration proceeding actually occurred some months later in August of 09. The arbitration award was the finding of gross insubordination. And that was an additional basis that the county relied upon in not deciding to rehire these two nurses. And that was something that occurred long after the Martinez statement. The arbitration is further evidence that Cook County had a legitimate reason not to rehire. And that alone would be a legitimate reason not based on anything to do with animus. I want to address the issue in regards to that's discussed a little bit at page 10 and 11 of the county's brief, that the arbitration decision is binding that there was insubordination. It's undisputed that the arbitrator did not address the labor issues. There isn't any issue about that. But there's a number of cases that I've cited in the brief that the arbitration is still binding, even if he didn't discuss that, on the basis of res judicata, certainly on the issue of insubordination. And on the issue of res judicata, I wanted to address one case further that was one case that came up in the Attorney General's brief at page 13 on the issue of res judicata. And that is the Attorney General cites Tararo, Tarrico, T-A-L-A-R-I-C-O versus Dunlap, which is 177 Illinois 2nd, 185, which is a 1997 case, for the proposition that under res judicata there has to be identical issues to be decided for it to apply. That case was overturned or distinguished the next year in River Park versus the City of Highland Park, which is 184 Illinois 2nd, 1998, which is where the court adopted Section 24 of the Restatement of Judgment 2nd in holding that res judicata applies if the same operative facts are involved, which is a very different standard than the same issue. So the arbitration, I believe, is in a binding award, which was the basis for the county not to rehire, and that the record is clear based on that information and also on the dissent. I ask you in conclusion to reverse the decision of the Illinois Labor Relations Board and uphold both the discharge and refusal to rehire the nurses. If there's any questions, I'd be happy to try to answer them for you. All right. Let's hear from the other side. We have plenty of time for reply. Thank you. Thank you. Further forward. Truett. I'd like to first start with the preclusion issue. I'm not familiar with the case that he's citing to. I don't believe it was addressed in the reply brief. I certainly, if the court is concerned about this issue, I can submit supplemental authority after the argument. It's not clear from his presentation whether he's referring to res judicata or collateral estaple, but in any event, neither applies because the relevant factual issue for the claim that is now before the court, it concerns the statements at the grievance meeting in May 2009. Arbitrator only considered whether or not the September 2008 discharge was for just cause. So the issue about the settlement of the grievance, the issue about the possible reinstatement of the employees, that entire factual and legal issue was never presented to the arbitrator. So you concede then that the arbitration traitor is holding that it was for just cause, that it was for gross insubordination was correct. You just have a different ground to try and say that later the, so all you're attacking is the decision not to rehire somebody. Is that right? Exactly. We agree that that fact or that conclusion is binding. We disagree as to the legal effect on the subsequent claim. The subsequent claim, it's possible to reinstate someone who has been discharged for just cause. And in this particular case, Martinez, in an effort to settle the grievance that was pending, offered to reinstate Beverly Joseph but refused to reinstate Michener because of her grievance activity. And then later when the county didn't take either one back, Joseph wasn't offered the job either, right? That's correct, yes. How then is that evidence of Martinez's anti-union bias when they didn't take Joseph back either? They had done the identical thing that Martinez did, and yet had not done anything wrong, according to Martinez. Martinez was willing to take her back, apparently, and somebody somewhere decided they didn't want to. How did that occur? Well, the way the discussion proceeded at the grievance meeting is that immediately after Martinez made the statement, one of the union representatives asked him to clarify his statement. He repeated it. And he repeated it, and then the discussion moved on to another grievance. So it's not as if there was some subsequent decision made by a higher-up to Martinez regarding this grievance. The discussion fizzled out at the May 2009 meeting. So it's a settlement conference. So he offers Joseph the job back if she'll sign. What occurred? Or can you tell me what occurred? I can speculate, but the record is not clear. It must be unclear because it was a settlement offer, because that's what that was. It was a settlement discussion. It was a settlement discussion. Which is not part of the record. Normally, settlement discussions are not part of the record, are they? Well, are you referring to Federal Rule 408? I'm referring to Illinois Rule of Evidence 408. Okay. Yes, I am. Well, under the ‑‑ I mean, their brief has relied upon Federal Rule 408, and that's the ground that was argued before the board. Under Federal Rule 408, there's the Uforma case, which explicitly says that Rule 408 only applies to the particular claim that's being settled. What was being settled was the grievance over their discharge. The unfair labor practice that arose in that context is a totally separate claim. It's an unfair labor practice by a refusal, a discriminatory refusal to reinstate one employee. And so it's a different claim, and therefore, under the logic of Uforma, and Uforma even lists an unfair labor practice as the type of thing that can occur during a settlement conference that is not precluded by Rule 408. So it is true that these ‑‑ And when was the ‑‑ go ahead. I'm sorry. The Uforma case is, I believe it's a Sixth Circuit case from ‑‑ Okay. Did it come down before our Rules of Evidence were adopted in 2010 or 2011? It's an older case. But again, the issue as argued to the board was an analogy to the federal rules. And under the board's own rules, the board is not ‑‑ it follows Illinois rules, but it's not bound by those rules. So in essence, the board is not technically required to follow Illinois rules in lockstep. It certainly attempts to follow Illinois rules where practical. But under the board's own Rules of Evidence, the Illinois Rules of Evidence are not technically binding on the board. So what is binding as far as the Rules of Evidence? I mean, again, the board attempts ‑‑ I mean, it follows its own precedence in Rules of Evidence, and it follows Illinois Rules of Evidence where practicable. But this issue was argued before the board as an analog to federal Rule 408, and all of the cases cited were federal cases. So that's how it's been argued so far. Well, at your brief, at page 29 at the very bottom, Section 11A of the Act provides that in any hearing conducted by the board, neither the board nor the member or agent conducting the hearing shall be bound by the Rules of Evidence applicable to courts, except as to the Rules of Privilege recognized by law. Now, how is it not a privilege that when you're in a settlement conference, you can actually tell the truth in what your position is and then not have that held against you moments later or, frankly, years later when the arbitrator decides that this was the right thing to do, to fire people who work with children who refuse to have their criminal histories run? Well, I believe there are a few issues in there that I'd like to untangle. The first thing, I'd like to address the public safety issue, and there's a couple important considerations there. First of all, the board's order, as I believe it was mentioned during the Appellant's argument, is contingent upon them not only submitting to but also passing the background check. So doesn't that show how important it is that employees at the juvenile detention center have their rap sheets run? Doesn't that fact, the board's holding, show that the arbitrator was correct and that these women, these nurses, refused a lawful order, a rational order to have to submit to a criminal background check? The issue of their insubordination or the legitimacy of the background checks is not in dispute here, Your Honor. But the second point that was raised by the administrative law judge was that because of the nature of the Cook County health and hospital system, even if you were to reinstate these employees, there's no requirement that they would have to be detailed to the JTDC. Within CIRM Act, they serve both the JTDC and the county jail. We should give them three years, eight months back pay and then assign them somewhere. Perhaps we should let them decide where they should work. Well, the collective bargaining agreement covers all of the nursing units within the CCHHS, so that is an option within the established collective bargaining framework. Okay. Is that a requirement, the Leeds and Kants check for all nurses? No. The Leeds and Kants check was imposed due to the constitutional litigation at the JTDC. You know, there was a suit filed by the ACLU that alleged unconstitutional conditions, and when transitional administrator Dunlop came into authority, he ordered that as one of the things to improve the quality of services at the JTDC. But, for example, if you work, I'm not aware of a general background check form requirement to be staffed at any other CCHHS. So not even at CIRM Act Hospital, which is contained within the County Department of Corrections at 26th and California, Division 5. There's no requirement that they have to submit to a criminal history check? I mean, certainly they're not required. They're not subject to the transitional administrator's order. That was the subject of this dispute. Whether or not the hospital has its own, you know, whether or not the hospital at the Cook County Jail has its own requirements. But they wouldn't have to obey such a requirement, because that's what you want us to hold, right? You want ILRB, they wouldn't have to do this. They wouldn't have to obey this kind of thing. It's what you want us to hold. I believe that at this point we're combining the original claim, which was we were not discharged for cause, with the secondary claim. The secondary claim is the only issue that's before the court now. The board held that the employees were discharged for cause and found that there was no unfair labor practice with the discharge, because what you're describing is not protected activity. The principle of grief work now, grief later, means that you can't simply refuse to issue an order. But that has no bearing on the subsequent claim, which is you can't discriminatorily offer to settle agreements or reinstate an employee on the basis of protected activity. And it's clear that grievance filing is protected activity. But, again, Joseph never – did Joseph file grievances? Was that a problem? Of the 14 grievances that Michener filed, seven were filed on Joseph's behalf. Okay. The – is there a time limit when the board decided that they'd give these ladies a second or third or fourth chance to let their criminal histories – suppose we affirm, for whatever reason, and it goes in, do they have to do that within a day, 30 days, another year on the government's pay? Well, maybe a little bit more? The typical procedure with remedial orders is that if the – whoever is the prevailing party before the board, if they believe that the remedial order is not being complied with, then they can bring a proceeding in the board to enforce the remedial order. So the way I would imagine it would happen here is if the employees – say the employees refuse or delay in signing the background checks, but they – and Cook County refuses to reinstate them. The employees would then have to file a petition to enforce the board's remedial order, and then I assume that Cook County would raise the defense that the nurses were not compliant with the terms. If the – if the – if you're a briefer, a counsel's briefer, point out that the nurses in question had submitted, in order to retain their licenses, to a cant check some months prior to this. So it's really only the idea of running a criminal history that they fought. Is that right? To be honest, this appears to be a dispute more over a matter of principle than the actual content of the background check, but I believe that the nurses' counsel would be more capable to attend to that. No problem. There is one last thing that I would like to address on the preclusion issue, and that is that there was an argument made in the reply brief citing to a provision of federal law that says that the National Labor Relations Board lacks remedial authority to require reinstatement when an employee is discharged for cause. And there's – because this statutory provision was cited for the first time in the reply brief, I would just like a short opportunity to reply. And there's really two shortcomings with this argument. The first is that the Illinois Public Labor Relations Act does not have a comparable provision. So whatever the statutory requirement or limitation in the federal act, that has not been incorporated into the Illinois law. And the second limitation is that there's a 1983 U.S. Supreme Court case that was called Transportation Management. And it interprets this provision, which is Section 10C of the federal act, and it says that 10C doesn't apply to mixed motive cases. So it doesn't apply to a case where an employer might have a legitimate reason, but also an illegitimate reason. The court reasoned in Transportation Management that what this provision is really about is sort of you're either discharged for cause or you're not. It didn't really contemplate the idea that you could be discharged for a legitimate and an illegitimate reason, largely because the idea of mixed motive didn't come about until much later after this provision was enacted. So there's – even if we were to assume that federal law we're controlling here, there's a U.S. Supreme Court case that says that under the scenario postured here where you might have a legitimate motive, but you also have an illegitimate motive, this provision does not bar reinstatement. Thank you. So did they equate those motives in? Is that what they're saying in that case? What they say is that 10C really assumes that you're either discharged for a valid or an invalid reason. The whole idea that you would prove a prima facie case and then the employer could rebut that prima facie case by proving they would have taken the same action even if they didn't have the discriminatory motive, that whole method of proof didn't exist at the time that 10C was adopted and therefore it sort of contemplated a black or white. It didn't apply to the scenario where you had this affirmative defense that an employer could raise. Counsel, one more question. Remind me the admissibility of that evidence relative to what went on in the settlement conference. That's based on what? Their argument before the board and in their opening brief was predicated upon federal Rule 408. And the board's argument was twofold. It was that we're not bound by the federal rules of evidence and also that even under the federal rules of evidence, because the unfair labor practice is a separate claim, there's the Uforma case and other federal cases that hold that Rule 408 only bars using a statement to prove the claim under settlement, not some additional claim that arises during the context of settlement discussions. Okay, but what I don't understand is if the argument is we're not bound by Federal Rule 408 and even if we are, the Uforma case kicks in. What are they bound by as far as admission of these things? I mean, presumably they heard the evidence. There was no ground to exclude it. I guess the background presumption is that the evidence is admissible if it's probative and then it might be subject to some exclusion. But that reminds me, Justice Quinn had asked a question about privilege and this, I promise, will be my last point. You know, the issue of privilege was not raised in the Appellant's brief, but my understanding of privilege is more as a right to make it such that certain materials are not subject to discovery. It seems like privilege is an awkward fit here because the statement is made in the context of a settlement discussion. Thank you. Mr. Carmel. Sitting and listening and reading the briefs, and I tried the case, I tried the arbitration case associated with my office, tried the board case, but I'm intimately familiar with this litigation. What we have here today is an issue about a discrete act, a discrete unfair labor practice charge, and that is whether or not the county violated the statute by refusing to reinstate the charging parties because they had engaged in protected concerted activity. This is the reinstatement issue. We are not here addressing, at least I know the county is addressing and wants to conflate the discharge, the just cause, and the termination issue in this appeal. That's been decided by the arbitrator in a contractual, it was a contractual dispute, different parties, different issues. The arbitrator specifically stated that he was not deciding the statutory issues. That was passed on to the labor board. Prior to that, it occurred, the arbitration occurred because your union or your people agreed that they would abide by the final arbitration. Is that right? It's pursuant to a contract. Let me explain how that happened, Your Honor. Okay. Leslie Michener and Beverly Joseph, the two charging parties, filed their own unfair labor practice charges as they have the right under the statute to do. Leslie Michener filed them on behalf of herself, Beverly Joseph, and other nurses. Beverly Joseph filed similar, if not identical, unfair labor practice charge on behalf of herself. They were not filed by the union. The parties in the arbitration are the union and the county. Those are the contracting parties. So the grievance, the unfair labor practice charges preceded the arbitration. Maybe there's a long way to explain how that, chronologically how that occurred and procedurally. So the union is not a party in this appeal. They weren't a party at the labor board because these were unfair labor practice charges filed by these two nurses on their own, on their own behalf and on behalf of others as well when the unfair labor, many unfair labor practice charges they filed. Not only did they file 14 grievances, they filed dozens of unfair labor practice charges on their own. The dissent described them as, the dissent in the ILRB case described them as inordinate. I don't know what inordinate is. They filed a lot. But in any event, this is, the only issue here is the reinstatement issue. And the evidence is undisputed. They offered to reinstate Joseph, didn't they? Before the arbitration. They offered to, before the arbitration, they offered to reinstate, you know, we would reinstate Joseph but for the fact that Beverly Leslie Michener filed 14 grievances. Oh, is that how you interpret that? That's how, well, in fact, they didn't reinstate Joseph. And I think the labor board was within their expertise to say they didn't reinstate Joseph. She also filed grievances. It was expressly stated by Martinez without any dispute that. And how did they get to that? How did the ILRB determine that it was appropriate that they consider Martinez's alleged statement? And the statement you repeated. How did they get to that? How did they get to the statement? How did they decide that was a good idea, that they could allow in Martinez's statement? The whole complaint, labor board case, depends upon letting in Martinez's statement, does it not? It does. There is no other evidence in the record of the anti-union animus other than Martinez's couple of sentences. Is that right? I don't mean to diminish it. Okay. Is that correct? They allowed it in because, as counsel for the board already stated, I mean, whether they expressly relied on the deformity case, the rules of evidence don't preclude statements of bad acts, you know, unlawful, that they don't shield unlawful statements in a settlement discussion. I can't say in a settlement discussion I don't want to settle this case, and if you don't settle it, I'm going to kill you tomorrow. I think that's admissible. What rules are you referring to? I'm sorry? What rules specifically are you referring to? Well, I think Federal Rule 408 doesn't preclude that. Okay? I mean, you can't say in a settlement discussion, you can't commit a crime in a settlement discussion, in order to enforce your settlement discussion, in order to get your settlement through. That's, you know, okay? And that's where the board properly allowed the statement. And in terms of the quantity or the quality of the statement, I don't even think the county is disputing the quality of the statement. They're saying it shouldn't have been allowed in, and therefore we win, which probably is the case. It was allowed in, and now they're saying, well, there wasn't enough of a statement. There wasn't enough anti-union animus. You know, I've been doing labor law for 30 years and employment law. If I had a case like this before, in a different context possibly, where an employer said, I'm not reinstating that person because they're African American or they're disabled. I don't need any more. I don't need anything more in this case that I'm not reinstating Leslie Michener because she engaged in protected activity. There is nothing more to prove anti-union animus. And I indeed, Your Honors, I don't even think this is a mixed motive case. So when the arbitrator, an independent arbitrator, said absolutely they should have been fired, they should work and then grieve, it was not even close. Would that be right? With all due respect, I don't want to be, you know, I think that's conflating the argument here or conflating the issue. Well, aren't they mixed? If it's mixed, wouldn't we have to include them? No, no, I don't think they're mixed. I think it's a discrete. Why would we agree with you that it's not mixed? Okay. I don't think it's mixed. I think this is a discrete event that occurred independent of the termination. After the termination? After the termination. I have been through many grievance settlement meetings. I've been through many labor court settlement meetings. Okay. Let's go back to my earlier question. Sure. Isn't the Board's order that they're allowed to return to work if they obey the order, their order, as opposed to the order of the Federal Administrator to submit to criminal history checks? Doesn't that support the notion that they had to obey, that they had to cooperate and submit to a criminal history check? That issue is not, again, the fact that they didn't submit to the Leeds CANT test is not an issue in this. Well, actually, you bring it up in your brief. So they submitted, you bring it up in your brief, that they submitted to a CANT check in order to retain their nursing licenses. Is that right? Or for whatever reason would be, they submitted to it for a different agency. They submit to background checks. Okay. I think you say CANTs in your brief. Yeah. So the, but they wouldn't give a CANTs check to their employer, to the juvenile correctional institution. They were not going to give it to them. What possible principle was that based on? Well, and this isn't really part of this, again, this appeal, and I wasn't part of the record. Well, you're arguing something that's so bad. Go ahead. Okay. I will tell you, they filed charges and filed grievances saying that the implementation or the requirement to submit to the Leeds CANT test was a unilateral change in their working conditions. Whether that's a legal, you know, whether that was a winning legal argument, that is what Leslie, you asked me, that's what Leslie Mitchner did as union steward. She said we are not refusing flat out. In fact, when they signed, they said we're not refusing. She, as union steward, she probably, you know, she made some bad decisions. She may have gotten some bad advice. I don't know. But she was doing it just for the principle that it was a unilateral implementation of a new working condition that had not been negotiated and bargained with the union. You know? If they told her that you have to now start, you know, wearing, you know, your left shoe on your right foot or. . . That would be a little different than working with children and not having their history run, right? There's no doubt. I think it's a little different than wearing funny clothes. There's no doubt, Justice Quentin, and I didn't. . . I know. It's hard to argue. That it was an important requirement, and they didn't deny that it was an important requirement. They asked to meet with the county to discuss the effects of this. I mean, you go out. . . And one of the issues they had was they had just submitted to background checks in order. . . You have to. . . Nurses have to submit to background checks yearly. Including criminal history checks? I believe so. Then why wouldn't they. . . This was a different kind of a check, okay? But they have to submit to background checks yearly. You know, if you work at county JTDC or if you work at Stroger. . . And they've done that all through their career. This was a new kind of a test or a new kind of a background check that they. . . Leslie Michener, as a steward, believed that it should have been discussed first with the union. And it wasn't. They just unilaterally implemented it. Whether the TA had the authority to do it or not, Leslie Michener didn't know. But she filed grievances. And when they refused to meet with her, she filed charges. And that got the ball rolling. That got the ball rolling. And everybody got their back up. And that's why we're here now many years later. And I share your frustration in how long it takes for these cases. . . Oh, I'm not frustrated at all. I am. I am. Believe me. Oh, I'm not. This is a rocket dock compared to the NLRB sometimes. Oh, there's no question about it. Yeah. It's been ready for less than a month. Counsel, can I ask you a question? Sure. The Martinez meeting where the Martinez statement was made. Yeah. It was either April or May of 2009. And was that a grievance hearing? That was a. . . The contract between the nurses union and the county has a multi-step process. And this was a grievance settlement meeting where they have on their docket for that day the HR rep who was at Martinez on that day and the union reps have a list of grievances that they're going to meet and try and settle on or move to the next step. What I'm trying to figure out is there a difference between a grievance hearing and a pre-arbitration settlement? This was not a grievance hearing where they had a. . . because, again, the contract has grievance hearings. This was a grievance settlement meeting. Is there any difference as to what rules apply relative to evidentiary standards between those two? Between the parties? Right. No. Thank you. No. Do you have anything else, Counsel? I don't, not other than if you have any other questions. Thank you. Thank you, Mr. Carmel. State briefly. On the issue of the grievance settlement or whatever, here was the actual testimony and it's cited in my reply brief, yes, by one of the nurses who was called as a witness on behalf of Nurses Michener and Joseph. And it's on page 3 and it's at the bottom. And Regina Ellis was the nurse who testified. The purpose of that meeting was to discuss pre-arbitration cases with the county and attempt to come to some settlements before the cases go to arbitration. And that's exactly what the testimony was. I don't have anything else. I think it was covered. Thank you. This case will be taken under advisement and this Court will be adjourned.